ELIAS SPENCER v. THE UPDIKE GRAIN Co., Appellant.

**Negligence:** MASTER AND SERVANT: EVIDENCE. In this action for injury to an employee by reason of the failure of the rope on a car puller to slacken, evidence that the superintendent of defendant had on former occasions observed that the rope did not work satisfactorily and that it had been necessary to stop the machine on that account, which was not necessary to its proper operation, was admissible to show the defective condition of the machine, and also as bearing on defendant's negligence in failing to warn plaintiff of the danger.

**Same:** Evidence of witnesses familiar with the operation of a car puller, that the clutch on the puller in question was so placed that in managing the rope on the drum plaintiff could not operate it without going around the machine, and if properly placed it would have been within reach and the machine could have been immediately stopped by plaintiff, was admissible.

**Same:** PREJUDICE: REVIEW ON APPEAL. Where the plaintiff's injury, though permanent, was not such as to affect his expectancy of life, the fact that his expectancy as shown was from a date prior to the trial a short time, rather than from the trial itself, was not prejudicial; and if there was any error in its admission it was cured by the instruction of the court. Besides no proper objection to ' the evidence in this regard was made at the trial.

**Same:** FAILURE TO WARN: INSTRUCTION. Where plaintiff's injury was the result of a defect in the machine with which he was at work, and not of any negligent act of his or of a co-employee in operating the same, submission of defendant's negligence in putting plaintiff to work without warning was proper.

**Same:** ASSUMPTION OF RISK. Where plaintiff was injured as the result of a defective machine which he was operating for the first time, and the defect was not known to him or obvious to an ordinary person without experience, and he did not know that it was unsuitable for the purpose and in the method in which it was being used, he did not assume the risk of danger therefrom.

*Appeal from Harrison District Court.*—HON. E. B. WOODRUFF,
Judge.

FRIDAY, DECEMBER 13, 1912.

ACTION to recover damages for personal injuries received by plaintiff while in the employment of defendant. There was a verdict and judgment for plaintiff, from which defendant appeals.—*Affirmed.*

*Greene, Breckenridge, Gurley & Woodrough* and *Tinley & Mitchell,* for appellant.

*S. H. Cochran,* for appellee.

MCCLAIN, C. J.—Prior to the day of the accident resulting in the injury to plaintiff, he had been in the employment of defendant in unloading grain from freight cars by means of a steam shovel. On that day, for the first time, he was put in charge of a car puller, which was being used at the time to draw cars along the track to the proper place for unloading. The operation involved the use of a long rope, attached by a hook to the car to be moved; the rope being so drawn as to move the car by coiling it several times around a revolving drum. The operator would hold the rope taut back of the drum, and its revolutions would cause the car to be drawn along the track as the drum revolved. The method of discontinuing the application of power to the car was usually, not by stopping the drum, but by allowing the rope to become slack, so that it would slip on the drum. While plaintiff was engaged in handling the rope as it came away from the drum, his coemployee, who was managing the car at the end of the rope, directed him to give slack, and this, for some reason, plaintiff was unable to do, as the drum continued to draw the rope, For the purpose of loosening the rope on the drum, plaintiff took hold of the rope with his right hand in front of the drum, and his finger was caught between the portion of the rope which was being drawn in and the portion which was being coiled on the drum, and was so injured as that

amputation became necessary, and this is the injury for which recovery is sought.

The negligence of the defendant, under the allegations of the petition, which were submitted to the jury, consisted in placing plaintiff in a dangerous place to work, in that the car puller was in such condition that it would not allow the rope to slack, and in placing plaintiff in a dangerous position to work without explaining to him the dangers connected therewith, and in maintaining the car puller without a proper clutch appliance to stop the same. There was an allegation of freedom from contributory negligence, and the defendant, denying all negligence on its part, also alleged assumption of risk.

I. It was material for plaintiff to show that the car puller was in some way defective, and that the defendant had

1. NEGLIGENCE: master and servant: evidence.

knowledge, or should have had knowledge, of this defective condition. For the purpose of showing that the car puller did not work properly, and that its condition was in some way defective to defendant's knowledge, the plaintiff was allowed to prove that on previous occasions defendant's superintendent had observed the rope becoming tangled in some way on the drum, and that he had found it necessary to throw out the clutch and stop the drum. We think that this evidence was competent. It appeared that in the proper operation of the drum it was not necessary to throw out the clutch, in order to stop the pull on the rope; this being accomplished simply by giving slack to the portion of the rope which was being played off from the drum. If the puller did not, in this respect, operate as was intended, it was either defective, or the method of using it which defendant authorized was not a proper method. The evidence was also competent, as we think, on the question whether plaintiff should have been warned of the danger involved in the rope becoming tangled in some way on the drum.

The cases relied upon for appellant on this proposition

are not in point. In *Croddy v. Chicago, R. I. & P. R. Co.,* 91 Iowa, 598, it was held not error to reject evidence of the previous killing of stock at a railroad crossing, in an action to recover for stock killed at such crossing. It is evident that the previous negligent operation of trains at the crossing in question would have no tendency to show that the particular train, the operation of which was complained of, was negligently operated. In *Potter v. Cave,* 123 Iowa, 98, the question was whether a stairway in defendant's storeroom, down which the plaintiff fell, receiving the injuries complained of, was maintained in a dangerous condition; and it was held error to admit evidence tending to show that complaint had been made to an employee of defendant that it was in a dangerous condition. The complaint was as to the insufficiency of light and of guards, which made the stairway dangerous to persons passing near it. Plainly the actual condition of the stairway as to light and guards was the sole question to be determined in fixing defendant's liability, and warnings as to its dangerous character, conceding that defendant was aware of its condition, need not be shown. The evidence thus offered was prejudical to the defendant; for evidence as to previous accidents or warnings might be considered by the jury as tending to show that he ought to have adopted precautions which he did not adopt, even though, as a matter of law, the happening of a previous accident, or the giving of warning, would not require any greater care or precaution on his part than that required by the knowledge of the condition of the stairway, with which he was necessarily charged. We think there was no error in the admission of this evidence.

II. The plaintiff was allowed to introduce the testimony of certain witnesses familiar with the operations of a car puller to show that the clutch was so placed 2. SAME. that the plaintiff, in managing the rope on the drum, could not reach it without going around the machine to do so, whereas, if it had been on the other side of the machine, and within reach from the place where the operator

stood in connection with the use of the machine, the clutch could have been thrown out with safety, so as to immediately stop the drum. This evidence, we think, was properly admitted. It would be difficult to describe to the jury the relations of the portions of the machine to each other, so as to enable them to understand whether the machine would have been safer in its practical operation if the clutch had been differently located. The experts were not asked to say that the defendant was negligent, and thus invade the province of the jury; but they were called upon to explain the fact as to whether, in the matter referred to, the machine was as safe for the operator as it might, in the exercise of reasonable care, have been constructed consistently with its proper and efficient use. This consideration disposes of the cases relied upon for appellant, which hold that a question of negligence is not a subject for expert testimony, but should be left to the jury.

III. As the injury to the plaintiff was permanent, evidence as to his expectancy of life was material. It was contended for appellant that the expectancy of life shown was that of the date of the accident, and not that of the date of the trial, and that the evidence was therefore incompetent, relying upon *Hughes v. Chicago, R. I. & P. R. Co.*, 150 Iowa, 232. But in that case the question was as to the expectancy of life of a person who was, at the time of the trial, not in the condition of health and bodily soundness which had existed before the injury. In this case there was no evidence whatever tending to show that, save for the permanent loss of his finger, plaintiff was not in as sound condition and having as great an expectancy of life as at the time of the injury. Moreover, the admitted evidence did not relate to the plaintiff's expectancy at the time of the injury, but to a date somewhat subsequent to the injury and only five months preceding the time of the trial. The evidence complained of consisted simply of an admission, on behalf of defendant, that at the date specified plaintiff's expectancy of life was fifteen years. Why this date was fixed in the admis-

3. SAME: prejudice: review on appeal.

sion does not appear; but we are justified in assuming that by
the admission plaintiff's counsel was reasonably led to assume
a concession for defendant that the expectancy of life, at the
time of the trial, was that specified in the admission. No com-
plaint was made at the time that the expectancy of life referred
to was not the proper one to be considered by the jury. As a
matter of fact, the date referred to was the date of the filing
of the petition. As no future pain or suffering could, under
the instructions, be made the basis of the allowance of dam-
ages by the jury, and only impairment of future earning
capacity could be considered, we think that the error, if any,
was without prejudice; but, whether so or not, the appellant
cannot complain, in view of the failure of counsel to object in
any way to the admissibility of the evidence that the plaintiff's
expectancy of life was fifteen years. Counsel for defendant
did, in a general way, object to the evidence as to expectancy
of life as incompetent, irrelevant, and immaterial, but in no
way pointed out that the objection related to the date as to
which expectancy of life was admitted. There was no error in
this respect of which appellant can complain.

The complaint of an instruction referring to the conces-
sion as to expectancy of life is disposed of by what has already
been said. And in such instruction the court practically cured
any error as to the evidence of expectancy, so far as it related
to the date of its computation; for the jury was told that if
plaintiff was found to have been permanently disabled, so as
to impair his future earning capacity, he should be allowed
"such further sum as will reasonably compensate him for such
loss in future earning capacity, if any, as he has shown to have
sustained by such accident," taking into account, with many
other things, "his expectancy of life, which in this case you
are instructed is fifteen years from October 18, 1910." Evi-
dently the damage from impairment of future earning capac-
ity was to be estimated by the jury from the time of the ver-
dict. And the plaintiff's expectancy of life, estimated at a
date five months previous and after he had sustained the injury

complained of, could not have been materially different from his expectancy at the date of the verdict. The possible discrepancy was so small that we would not be justified in reversing on account of the alleged error.

IV.   The court did not err in submitting to the jury the alleged negligence of the defendant in putting plaintiff to work in a dangerous place without explaining to him the dangers connected with his employment in that place. The alleged unsafety of the work about the machinery did not arise from the negligent act of the plaintiff himself, or of a coemployee in putting the machinery in operation while the plaintiff was in a position to be injured by doing so, but it arose, if at all, from the defective nature of the machinery. Therefore the case of *Peterson v. Chicago, R. I. & P. R. Co.,* 149 Iowa, 496, is not in point. The same suggestions indicate the inapplicability of what is said in *Galloway v. Turner Improvement Co.,* 148 Iowa, 93, where the alleged negligence was not that of the defendant in providing an improper machine, but that of the plaintiff's coemployee in starting it without warning to the plaintiff. In *Sutton v. Des Moines Bakery Co.,* 135 Iowa, 390, it was conceded by the court, rather than denied, that defective machinery renders the place of work unsafe, so far as it threatens injury to an employee who is working about it. The question in that case was whether plaintiff had assumed the risk of working about unsafe machinery, or was guilty of contributory negligence in doing so. In none of the cases cited for appellant is there any indication that defective machinery may not be the basis for finding negligence of the employer in putting the employee at work about it, and render the place where he is thus put to work an unsafe place for work.

4. SAME: failure to warn: instruction.

V.   There was no error in instructing the jury as to the doctrine of assumption of risk and contributory negligence. The plaintiff was not familiar with the dangers incident to the handling of the machine about which he was working on the day of the accident for the first time. He was given no warning with

5. SAME: assumption of risk.

reference to such dangers. Therefore he cannot be said to have assumed the risk, unless such dangers were so obvious as to be patent to an ordinarily reasonable person without experience. He did not know that the machine was defective, or in some way unsuitable for the purpose for which it was being used, and in the method in which it was generally used, and therefore did not assume the risk arising from such unsuitableness or imperfection. These suggestions dispose, also, of what is said in argument in regard to failure of warning and contributory negligence. The question whether the accident happened without fault on the part of defendant was, under the pleadings and the evidence, plainly one for the jury.

The judgment of the trial court is therefore *Affirmed*.