McGeary, Appellee, *v.* Reed, d. b. a. Reed Plumbing & Heating Co., Appellant.*

(No. 4669—Decided February 20, 1957.)

*Mr. Ray J. McGowan* and *Mr. Robert Sheck,* for appellee.

*Messrs. Wise, Roetzel, Maxon, Kelly & Andress,* for appellant.

Stevens, J.   Plaintiff, an employee of Harvey Uhl Electric Company, sued defendant, Reed, to recover damages for personal injuries allegedly sustained by him when he tripped on an electric cord and fell, while working at the Springfield Local School District "Roosevelt School Addition."

Reed, the defendant, had a contract with the Board of Education of Springfield Local School District to do the plumbing, heating and ventilating work in the "Roosevelt School Addition," as an independent contractor, and at the time of plaintiff's fall was prosecuting his work through his duly authorized employees.

On August 28, 1953, at about 1:30 p. m., plaintiff, while in the course of his employment as an employee of Uhl Electric Company, was carrying a carton of electrical fixtures down the

---

*Motion to certify the record overruled, October 9, 1957.

interior basement stairway in the Roosevelt School Addition, as directed by his superior, Johnson. While descending those stairs, he tripped on an electric cord allegedly placed on said stairway by the employees of defendant, Reed, and, as a result thereof, fell and sustained serious injuries.

The negligence charged against defendant by plaintiff, in his petition, was as follows:

"* * * the defendant negligently caused said electric cord to be placed over and along such stairway as aforesaid, and negligently failed to give plaintiff any notice or warning that said electric cord was placed over and along said stairway at said time and place, when he knew, or in the exercise of ordinary care should have known, that plaintiff was required to use said stairway in the performance of his work as an employee of the Harvey Uhl Electric Co."

Defendant's answer to the petition was as follows:

He admitted he was an individual doing business under the name of Reed Plumbing & Heating Company, being engaged in the general plumbing and heating business in and about Summit County, Ohio; admitted that prior to August 28, 1953, he had been engaged in doing plumbing construction work in Roosevelt Grammar School in Springfield Township, Summit County, Ohio; admitted that plaintiff was an employee of Harvey Uhl Electric Company, and that he had been engaged, prior to August 28, 1953, in performing certain work in said school building; and denied all other allegations of the petition.

The cause came on for hearing before a jury, and at its conclusion a verdict for plaintiff was returned in the amount of $32,000, upon which verdict judgment was entered. This appeal on questions of law followed.

The evidence in the record discloses that Harvey Uhl Electric Company was an independent electrical contractor; that R. J. Reed, d. b. a. R. J. Reed Plumbing & Heating Company, was an independent plumbing contractor; that both, at the time in question, were engaged in performing their respective contracts in the construction of Roosevelt School Addition.

That addition, consisting of a basement and two floors, was constructed at the east end of an existing school building, in accordance with prescribed plans and specifications. There was

what was described as the "east entrance" of the addition, which consisted of eight outside steps leading to an outside landing, a 6-foot door opening, leading to an inside entrance landing 4 feet 11 inches deep, by 10 feet in width. From that landing, on the left, extended a stairway to the first floor level; and, on the right, a stairway to the basement. The stairway to the basement consisted of a steel frame providing for twelve steps 4 feet long, with conventional treads and risers.

At the time of plaintiff's alleged fall, those steps were filled with dry sand, in which were loosely laid wooden 2 x 4s.

During the morning of August 28, 1953, plaintiff and his foreman, Foster, worked on the second floor of the addition, installing electric fixtures, and the employees of Reed, the defendant, were working on the inside entrance landing, installing a "Univent." In their work, the evidence shows that Reed's employees plugged an extension cord into an electric outlet on the first floor; that cord extended from the outlet down the stairs to the landing, and an electric drill was attached thereto. The cord did not, in the morning, extend down the steps leading to the basement.

In the afternoon, plaintiff and his foreman continued to work on the first floor, but the employees of Reed worked in the basement, installing another Univent, and at that time there is evidence showing that the electric cord in question extended from the outlet on the first floor, down the stairs to the landing, across the landing to a spool in the northeast corner of the landing, thence down some of the steps of the lower stairway, through the banister to an electric drill lying on the floor of the basement, near where the plumbers were working.

At about 1:30 p. m. on said day, Johnson, one of Uhl's foremen, brought a load of electric fixtures in a truck to the Roosevelt School. He drove to the east entrance of the addition, and entered the building with a carton of fixtures, which he took to the basement. Upon his return to the landing, he called McGeary and Foster to come and unload the truck. They came from the first floor, down the steps to the landing, out the door and down to the truck, where McGeary took from the truck a carton 8 feet long, 5 or 6 inches wide, and 10 inches high, weighing about 30 to 40 lbs.

He placed the carton on his right shoulder, walked up the outside steps to the landing, and started to the basement by way of the stairs, when he tripped over the electric cord, fell, and was severely and permanently injured.

At the conclusion of the evidence, the defendant requested the court to give defendant's special request to charge before argument No. 1, which was couched in the following terms:

"The court says to you that under the undisputed facts of this case and the law of Ohio, plaintiff at the time and place of his alleged fall was a 'licensee' and that defendant owed him no duty except to refrain from wantonly or wilfully injuring him and to exercise ordinary care after discovering him to be in peril and not to expose him to hidden dangers, pitfalls or obstructions. Therefore, I say to you that plaintiff cannot recover herein unless he shall have proven by a preponderance of the evidence that defendant did not refrain from wantonly or wilfully injuring plaintiff or did not exercise ordinary care after discovering him to be in peril or exposed him to hidden dangers, pitfalls and obstructions."

That request to charge before argument and the refusal of the court to give it, raises the question which is the predicate for defendant's entire first assignment of error, and requires inquiry into the question of what, if any, duty owing to plaintiff was violated by defendant.

Plaintiff was an employee of Uhl Electric Company, an independent contractor, and the negligent acts claimed to have proximately caused plaintiff's injury were alleged to be those of employees of Reed, another independent contractor.

The rule as to the duties owing in such situation is stated in 57 Corpus Juris Secundum, Master & Servant, Section 610, as follows:

"Where two or more independent contractors * * * are engaged in work on the same premises, it is the duty of each contractor, in prosecuting his work, to use ordinary and reasonable care not to cause injuries to the servants of another contractor; and an employee of one contractor may recover against another contractor for injuries caused by the negligence of the latter contractor, or of his employees acting within the scope of their employment * * *."

See also: Lynch v. *Fred T. Ley & Co., Inc.*, 119 Misc., 681, 197 N. Y. Supp., 360, paragraph four of headnotes and p. 363 (4); *Rumsey* v. *Schollman Bros. Co.*, 156 Neb., 251, 55 N. W. (2d), 668; 38 A. L. R., 571, Section 19, annotation; and *Smith* v. *Brady* (N. Y.), 136 App. Div., 665.

Appellant's assignment of error No. 1 is, by him, divided into two questions as follows:

1. What was the status of McGeary, and what duty was owed to him by Reed at the time and place of McGeary's alleged fall?

2. Did McGeary prove, by competent and probative evidence, that Reed violated or failed to perform any duty owed to him by Reed?

Applying the rule above set forth to the first question of appellant, it is apparent that McGeary was a business visitor or invitee of the owner upon the premises in question, and not a licensee (*Schwartz* v. *General Electric Realty Corp.*, 163 Ohio St., 354, 126 N. E. (2d), 906, paragraph one of the syllabus); and the duty owed to him by Reed was "to use ordinary and reasonable care not to cause injuries to" him.

The second question propounded by appellant, as above set forth, may be answered in this way.

McGeary did prove to the satisfaction of the jury, by evidence which the jury considered of probative value, that Reed did not use ordinary and reasonable care so as not to cause injuries to plaintiff when Reed's employees permitted the electric cord to be and remain upon the stairway leading to the basement, under the circumstances then and there pertaining; and this court does not find such conclusion to be manifestly against the weight of the evidence. Accordingly, it is our conclusion that the trial court did not err when it refused to give defendant's special request No. 1 to charge before argument, and we find no prejudicial error in any of the other respects claimed by appellant in assignment of error No. 1.

Error No. 2, assigned by appellant, follows:

"2. Is McGeary, regardless of his status and the duty owed him by Reed, barred from recovery herein, as a matter of law, by reason of his contributory negligence and/or assumption of risk?"

The evidence on the subject of the claimed contributory negligence of the plaintiff is: that plaintiff was carrying a carton containing a light fixture upon his right shoulder when he fell; that he had used the basement stairway at noon in going to lunch, and had seen no electric cord at that time; between the time when plaintiff went to lunch and the time when he carried the carton down the steps, the defendant's employees had extended the cord across the landing to a spool in the northeast corner of the landing; and thence down across the basement steps into the basement. The cord was dirty, greasy and muddy, and there were no overhead lights on the basement stairway.

In speaking of the duty of a pedestrian upon a public street to see certain iron rods or bolts which protruded from the sidewalk upon which plaintiff was walking, this court, in *Keech* v. *City of Elyria*, 85 Ohio App., 503, 89 N. E. (2d), 174, said:

"4. Pedestrians on sidewalks are not required, as a matter of law, to keep their eyes continually sighted on the walk. They are required only to exercise such watchfulness and care for their own safety as persons of ordinary carefulness and prudence would observe under the same or similar circumstances."

So here, the plaintiff, on the subject of contributory negligence, was not required to keep his eyes fixed continually upon the steps which he was descending, but was required only to exercise such watchfulness and care for his own safety as persons of ordinary carefulness and prudence would exercise under the same or similar circumstances.

Whether or not plaintiff did exercise the degree of care above set forth was a question not to be resolved by the court as a matter of law, under the circumstances and conditions here pertaining, but rather a question for submission to the jury under proper instructions. We find no prejudicial error in the court's submission of the question of contributory negligence to the jury under the instructions given, nor do we find the jury's conclusion thereon to be manifestly against the weight of the evidence.

We further hold that the doctrine of assumption of risk has no application to the circumstances shown by this record. The rule of assumption of risk is that one who voluntarily ex-

poses himself to an obvious, known and appreciated danger assumes the risk of injury that may result therefrom. *Mudrich, a Minor,* v. *Standard Oil Co.,* 87 Ohio App., 8, at pp. 17 and 18, 86 N. E. (2d), 324.

In the instant case, the evidence clearly establishes that the plaintiff did not know, prior to his fall, of the presence of the electric cord on the basement stairway, and without such knowledge he could not voluntarily, consciously and deliberately have elected to encounter a danger which he did not know existed.

Appellant's next assignment of error asserts that the trial court erred in admitting into evidence the Carlisle Expectancy of Life Table for a man fifty years of age, and in charging thereon, when the evidence shows that plaintiff, at the time of trial, was fifty-three years of age.

To the introduction of that evidence, the defendant objected, and, when the objection was overruled by the court, defendant excepted.

No request was made by counsel for defendant to limit the application of the table to one fifty-three years of age, nor did he point out that his objection related to the date as to which the expectancy of life table was admitted.

He is in no position to complain now, not having given the trial court an opportunity to rule on the question. *Spencer* v. *Updike Grain Co.,* 158 Iowa, 31, 138 N. W., 820; *Murray, Admr.,* v. *Omaha Transfer Co.,* 95 Neb., 175, 145 N. W., 360.

It is next asserted that the court erred in charging upon the subject of contributory negligence. The court charged as follows:

"* * * Yet, if from all the evidence you find it more probable that the employee or employees of the defendant did not place this electric cord where it was alleged to have been, or, if they did so place it, it did not constitute negligence, or if it did constitute negligence it was not the direct and proximate cause of the plaintiff's fall, or if you find that the plaintiff was guilty of failing to use ordinary care for his own safety by the degree of proof charged, your verdict will be for the defendant.

"In passing on the question of contributory negligence, you will consider what the plaintiff was doing at the time of the fall, whether the stairs were light or dark, the color of the elec-

tric cord, whether the plaintiff had knowledge of its existence, or in the exercise of reasonable care should have had knowledge, the weight of the object he was carrying, the size of it, the condition and the color of the steps, and any other thing that was proved by the evidence and that your human experience tells you to consider to determine whether the plaintiff was using ordinary care for his own safety. The fact that one or more persons may have gone down the same stairs without falling is a circumstance for your consideration in determining the question of contributory negligence, but such a fact would not make it conclusive that the plaintiff, in falling, was guilty of negligence.

"In walking or descending or ascending stairs, one's eyes do not have to be constantly and continually on the path in which a person is traveling, but the use of one's sense of sight and perception must be such as reasonable and cautious persons would exercise under the same or similar circumstances.

"Now, the conduct of McGeary immediately before his injury is to be judged by the conduct of persons acting with ordinary care for their own safety, and if you find by the degree of proof charged that in descending the stairs he did not act as reasonably cautious and careful persons would be accustomed to act under like or similar circumstances, then you will say the plaintiff was negligent, and if this negligence contributed in the slightest degree to cause his injury, your verdict will be for the defendant."

The claim of appellant is that the court did not have the right to point out various things which could be considered by the jury in determining whether or not McGeary, the plaintiff, was guilty of negligence. The case of *Lindeman, Admx.*, v. *Roche*, 18 Ohio App., 366, is cited as supporting authority.

We think that case is not authority for the position taken by appellant. There, in a wrongful death case, predicated upon the claims of excessive speed, and negligent and careless operation of the automobile in which decedent was riding, the court charged, without a defense of contributory negligence having been pleaded, that, if the decedent, at the time of and prior to the happening of the accident, acquiesced in and consented to

the speed at which the automobile was being driven, his administratrix could not recover for his alleged wrongful death.

The charge was palpably erroneous, because there was no evidence that the decedent acquiesced in, or consented to, the speed of the car, and was so held by the Court of Appeals, which reversed the judgment for defendant entered in the trial court.

Here, the charge of the trial court upon the subject of contributory negligence was full, accurate and complete, and it enunciated the correct rule by which the jury should be guided in determining the negligence, if any, of the plaintiff.

We think this assignment of error is not well taken, and we find no prejudicial error in connection therewith.

The next error assigned is the refusal of the court to submit to the jury defendant Reed's request for findings of fact. There were sixteen requested findings submitted by Reed. Of those requested, Nos. 1, 2, 6, 10, 14 and 16 were submitted and answered, and Nos. 3, 4, 5, 7, 8, 9, 11, 12, 13 and 15 were refused.

This case was tried after the amendment of Section 2315.16, Revised Code (126 Ohio Laws, 62, 63), became effective, which effective date was October 4, 1955. That section now provides:

"When either party requests it, the court shall instruct the jurors, if they render a general or special verdict, specially to find *upon particular material allegations contained in the pleadings controverted by an adverse party,* and submitted by the court in writing, to the jury, and shall direct the jury to return a written finding thereon. The verdict and finding must be entered on the journal and filed with the clerk." (Italics ours.)

It is to be presumed that the Legislature, in enacting the above section, meant exactly what is clearly and unequivocally stated, *viz.,* that special findings of fact should be submitted for the jury's answer only as to those particular material allegations contained in the pleadings and controverted by an adverse party.

Interrogatories 3, 4, 5, 7, 8, 9, 11, 12, 13 and 15 did not inquire as to particular material allegations *contained in the pleadings and controverted by an adverse party,* and hence were properly refused by the trial court.

It is next urged that the court erred in overruling defendant's motion for judgment on the special findings of fact, and notwithstanding the general verdict of the jury, and, in the alternative, Reed's motion for a new trial.

It is asserted that nine jurors, including the juror Hawkins, signed the general verdict for plaintiff. That meant that the nine jurors who signed the verdict found that the defendant was guilty of negligence in one or more of the respects charged, and that such negligence proximately caused the injury and damage to the plaintiff.

Ten of the jurors, not including Hawkins, signed the answer to interrogatory No. 6, which found that McGeary was caused to fall by the presence of the electric cord on and across the steps of the stairway between the entrance landing and the basement.

It is argued, therefore, that "Hawkins, one of the nine who signed the general verdict, did not find that McGeary was caused to fall by the presence of the cord on the steps of the stairway between the entrance landing and the basement floor level, and thus all of the nine jurors who signed the general verdict did not find that the presence of the cord on the lower stairway was a proximate cause of the accident, without which there can be no recovery herein."

The above argument is perfectly sound except for one thing, *viz.*, that all of the jurors, including Hawkins, signed the answer to interrogatory No. 14. That interrogatory was as follows:

"If you find by a preponderance of the evidence that defendant was negligent, then state of what such negligence consisted?"

The jury answered:

"Yes. In that the cord was placed on stairway in a careless manner, and that no warning was provided that cord was on stairway."

It is thus apparent that the juror Hawkins, who signed the above answer to interrogatory 14, but who did not sign the answer to interrogatory No. 6, found that defendant was negligent because no warning was given to plaintiff of the presence

of the electric cord on the stairway, and that such negligence proximately caused plaintiff's injuries and damage.

It may also be observed that interrogatory No. 6 only inquired as to whether the presence of the cord, on and across any of the steps between the entrance landing and the basement, caused plaintiff to fall. No inquiry was made as to negligence or as to proximate cause. The jury, by its answer, found only that the presence of the cord on the steps was *a cause* of plaintiff's fall.

We find no prejudicial error in the court's overruling defendant's motion for judgment on the special findings of fact, or its motion for judgment notwithstanding the verdict.

It is further our conclusion that the motion for a new trial was properly overruled.

Finding no prejudicial error in any of the respects urged by appellant, and being of the opinion that substantial justice has been accomplished herein, the judgment of the Court of Common Pleas will be affirmed.

*Judgment affirmed.*

HUNSICKER, P. J., and DOYLE, J., concur.